UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT CLARK BLACKFORD, | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *vs.* | ) | 1:14-cv-01717-JMS-DKL |
| | ) | |
| JPMORGAN CHASE BANK, N.A., | ) | |
| *Defendant.* | ) | |

## ORDER

Presently pending before the Court is Defendant JPMorgan Chase Bank, N.A.'s ("Chase")
Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [Filing No. 38.] Chase
seeks to dismiss Plaintiff Robert Clark Blackford's Second Amended Complaint, which alleges
various claims stemming from a dispute over a check that Mr. Blackford asked Chase to deposit.
[Filing No. 23.]

### I.
### STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the
claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)
(quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give
the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556
U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing the sufficiency of a
complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in
favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir.

2011).  The Court may not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief.  *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).  The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  Further, a "document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson,* 551 U.S. at 94 (citations and quotations omitted).

## II.
### BACKGROUND

The factual allegations in Mr. Blackford's Second Amended Complaint, which the Court must accept as true, are as follows:

On October 6, 2014, Mr. Blackford signed a Deposit Account Agreement (the "Agreement") to open a new account with Chase.  [Filing No. 40-2 at 1.][1]  Among other things, the Agreement states:

> We may refuse, freeze, reverse, or delay any specific withdrawal, payment or transfer of funds to or from your account . . . pending investigation, including one or more of the following circumstances: . . .
>   · We suspect that any transaction may involve illegal activity or may be fraudulent; [or] . . .
>   · We reasonably believe that doing so is necessary to avoid a loss or reduce risk to Chase. . . .
> We will have no liability for any action we take under this section.

---

[1] Because the Second Amended Complaint refers to the Agreement (which is attached to both parties' briefs), and because the Agreement is central to Mr. Blackford's claims, the Agreement is properly considered by the Court. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

[Filing No. 40-2 at 19.]  At the bottom of the same page, the Agreement states: "**WE WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.**"  [Filing No. 40-2 at 19 (emphasis in original) (the "Damages Limitation Clause").]

On October 17, 2014, Mr. Blackford visited a Chase branch to deposit a check for $17,500, drawn on the United States Treasury, to his checking account.  [Filing No. 23 at 2; *see also* Filing No. 40-1.]  The check bore Mr. Blackford's name, but a different address.  [*See* Filing No. 23 at 1; Filing No. 40-1.][2]  The teller assisting Mr. Blackford accepted the check and informed Mr. Blackford that Chase would hold $12,500 of the check until October 28, 2014 at the latest.  [Filing No. 23 at 2.]  Mr. Blackford asked the teller to return the check so that he could cash it at his former bank across the street.  [Filing No. 23 at 2.]  The teller refused to return the check, despite not having altered the check in any way,  and informed Mr. Blackford that Chase would release $2,500 of the check to him on the following Monday, October 20, 2014.  [Filing No. 23 at 2.]

On October 20, 2014, Mr. Blackford attempted to withdraw $2,500 from his Chase account.  [Filing No. 23 at 2.]  A Chase agent informed Mr. Blackford that Chase would not honor the check until Mr. Blackford provided proof that the check was his.  [Filing No. 23 at 2-3.]  On October 21, Mr. Blackford presented to a Chase agent a United States District Court Minute Entry detailing a settlement between Mr. Blackford and the United States, in an attempt to demonstrate that the check was his.  [Filing No. 23 at 3.]  Again, Chase declined to issue Mr. Blackford funds from the check and declined to return the check.  [Filing No. 23 at 3.]  On November 12, 2014,

---

[2] The check (attached to both parties' briefs) is also referenced in, and is central to, the Second Amended Complaint, and is also therefore properly considered by the Court.  *Wright*, 29 F.3d at 1248.

Mr. Blackford received the funds from his check, accompanied by a letter dated November 10, 2014. [Filing No. 23 at 5.]

Mr. Blackford alleges in Count One that Chase's actions constitute fraud, theft, theft by deception, defamation, unfair business practices, breach of contract, conversion, and tortious interference with business relationships under state law. [Filing No. 23 at 3-6.] Mr. Blackford alleges in Count Two that Chase's actions, in addition to other acts of theft and fraud, constitute racketeering under federal law, 18 U.S.C. § 1961, [Filing No. 23 at 6-7]. Mr. Blackford further alleges that, because the check funds were unavailable, he was unable to attend two business conferences that would have earned him "over $250,000 in lost earnings during the first year," [Filing No. 23 at 5], and over "$1,000,000 . . . over the first five . . . years," [Filing No. 23 at 6]. Mr. Blackford claims $1,000,000 in lost earnings as damages. [Filing No. 23 at 7.]

### III.
#### DISCUSSION

Chase asserts two arguments in support of its motion to dismiss. First, Chase argues that Mr. Blackford's Second Amended Complaint fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 8. [Filing No. 39 at 5-14.] Second, Chase argues that Mr. Blackford's prayer for consequential damages is precluded by the language of the Agreement. [Filing No. 39 at 14-15.]

The Court first addresses Chase's argument that Mr. Blackford fails to state a federal racketeering claim, which is Mr. Blackford's lone federal cause of action.

### A.  Federal RICO Claim

Mr. Blackford fails to specify which subsection provides the basis for his claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), though 18 U.S.C. § 1962(c) is the sole candidate. To state a claim under § 1962(c), a RICO plaintiff must allege that an enterprise

4

committed a pattern of racketeering activity. *See Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir.1995) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

Chase argues that Mr. Blackford's RICO claim should be dismissed for: (1) failure to demonstrate a pattern of racketeering activity; and (2) failure to plead the existence of an enterprise.[3] [Filing No. 39 at 12-14.]

### 1.  *Pattern of Racketeering Activity*

Chase argues that Mr. Blackford fails to plausibly allege a pattern of racketeering activity. [Filing No. 39 at 12-14.]  First, Chase contends that Mr. Blackford fails to allege any predicate RICO offenses.  This argument is two-pronged: Chase contends that (a) each allegation lacks sufficient particularity and plausibility, and (b) even if sufficiently alleged, the underlying acts alleged do not constitute predicate offenses under 18 U.S.C. § 1961(1).  [Filing No. 39 at 12-13.] Second, Chase contends that, to the extent Mr. Blackford alleges that Chase committed predicate acts against others, Mr. Blackford does not allege that the acts against others are related to the conduct committed against Mr. Blackford as required to establish a pattern of racketeering activity. [Filing No. 39 at 13.]

Mr. Blackford responds only to Chase's first argument, contending that Chase's conduct of fraud and theft against him constitute predicate offenses.  [Filing No. 41 at 9-10.]  Additionally,

---

[3] Mr. Blackford requests another opportunity to amend his complaint if the Court finds that the Second Amended Complaint fails to state a RICO claim.  [Filing No. 41 at 10.]  As an initial matter, motions must be filed separately from briefs unless ordered by the Court.  S.D. Ind. Local Rule 7-1(a).  Even though leave to amend should be freely granted "when justice so requires," Fed. R. Civ. P. 15(a)(2), the right to amend as a matter of course is limited to "force the pleader to consider carefully" whether and how the plaintiff wishes to amend the complaint, Fed. R. Civ. P. 15 Advisory Committee Notes.  Moreover, denial of a motion for leave to amend for a third time would be well within the Court's discretion—especially where, as here, the plaintiff seeks to amend on the basis of publicly available information. *See, e.g.*, *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009).

Mr. Blackford attaches a plea agreement entered into by Chase in a Sherman Antitrust Act proceeding, which he contends constitutes an admission that Chase "committed millions of crimes of fraud." [Filing No. 41 at 9-10.]

On reply, Chase argues generally that Mr. Blackford "has not set forth any claims against Chase that have a possibility of success and therefore his case should be dismissed." [Filing No. 51 at 4.]

A RICO claim must allege a minimum of two predicate offenses as defined by 18 U.S.C. § 1961(1) to even reach the question of whether there is a sufficient allegation of a pattern of racketeering activity. *See* 18 U.S.C. § 1961(1) (defining "racketeering activity"); 18 U.S.C. § 1961(5) ("[A] 'pattern of racketeering activity' requires at least two acts of racketeering activity . . . ."); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989); *Jennings v. Emry*, 910 F.2d 1434, 1439 (7th Cir. 1990). Underlying acts of fraud to support a RICO claim are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b), *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001); other predicate offenses must conform to the strictures of Fed. R. Civ. P. 8(a)(2), *Buck Creek Coal, Inc. v. United Workers of Am.*, 917 F. Supp. 601, 611 (S.D. Ind. 1995).

If two predicate offenses are properly alleged, the Court must examine whether the complaint has alleged that the predicate acts are related.[4] *Id. at 613.* Predicate acts are related "when the acts have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are inter-related by distinguishing characteristics and are not isolated events." *Id.*

---

[4] While not at issue in this case, RICO also requires that the pattern of racketeering activities "amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239.

The attached plea agreement, assuming it is properly considered,[5] contains an admission only to antitrust violations relating to fixing of foreign exchange rates, not to fraud or to any other violation covered by 18 U.S.C. § 1961(1). [*See* Filing No. 41-1 at 39-64.] Thus, Mr. Blackford is left with three acts that he contends serve as predicate offenses: theft and fraud, both stemming from Mr. Blackford's incident with Chase, and the antitrust violations from the plea agreement. Each of these is outside the scope of § 1961. Theft and antitrust violations are simply not found in the enumerated list of predicate offenses. *See* 18 U.S.C. § 1961(1); *Jennings*, 910 F.2d at 1438 ("[V]iolation of antitrust law is not a predicate act under RICO."); *Buck Creek Coal, Inc.*, 917 F. Supp. at 612 ("[T]heft is not the type of act that forms a predicate act under RICO."). Furthermore, even if the antitrust plea contained some admission that would amount to fraud, Mr. Blackford has not alleged that it is in any way related to the events stemming from his check.

This leaves only the fraud allegations. While some types of federal fraud violations constitute predicate offenses, such as mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, Mr. Blackford's common law fraud claim is not among these predicate offenses. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653 (2008) ("Congress chose to make mail fraud, not common-law fraud, the predicate act for a RICO violation."). Because Mr. Blackford has failed to allege any acts that could constitute predicate offenses under § 1961, the Court need not address whether the underlying allegations would satisfy Fed. R. Civ. P. 8 and Fed. R. Civ. P. 9. Without an allegation of a single predicate act, Mr. Blackford has failed to allege a pattern of

---

[5] The Court may, where a finding from a "prior proceeding is 'not subject to reasonable dispute,'" take judicial notice of court records. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081-82 (7th Cir. 1997) (quoting Fed. R. Evid. 201(b)). Chase does not challenge the Court's consideration of the plea agreement, [*see* Filing No. 51], and in its brief acknowledges that it has pleaded guilty to antitrust violations in a different proceeding, [Filing No. 39 at 13].

racketeering activity as required to plausibly allege a RICO claim, and the claim must be dismissed.

### 2. *Enterprise*

Chase also argues that Mr. Blackford failed to plead the existence of a separate enterprise. [Filing No. 39 at 13-14.]  Mr. Blackford does not contest or otherwise respond to this assertion. [*See* Filing No. 41 at 9-10.]

To allege an enterprise, a plaintiff must identify a defendant "that is distinct from the RICO enterprise."  *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655 (7th Cir. 2015) (citing *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853-54 (7th Cir. 2013)).  "A firm and its employees . . . are not an enterprise separate from the firm itself."  *Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930, 932 (7th Cir. 1999).  Rather, a plaintiff must allege a "truly joint enterprise where each individual entity acts in concert with the others to pursue a common interest."  *Bible*, 799 F.3d at 656.

Mr. Blackford solely alleges that Chase and its employees took actions that constituted racketeering.  Mr. Blackford fails to allege that Chase and its employees acted in concert with any other entity. Accordingly, Mr. Blackford fails to allege an enterprise as required to plausibly allege a RICO claim, and that claim must be dismissed for this additional reason.

In sum, Mr. Blackford has failed to allege any predicate acts or the existence of an enterprise, both of which are required to sustain a RICO claim.  Accordingly, his RICO claim is dismissed.

### B. Consequential Damages

Because the remainder of Mr. Blackford's claims are state law claims, the Court's jurisdiction rests solely upon the diversity of the parties.  Chase challenges Mr. Blackford's request

for consequential damages as precluded by the Damages Limitation Clause in the Agreement. [Filing No. 39 at 14-15.] If Mr. Blackford is precluded from recovering consequential damages, he will be left without any claim for damages and his complaint will be unable to satisfy the amount in controversy required to invoke the diversity jurisdiction of this Court. *See* 28 U.S.C. § 1332(a) (requiring that the amount in controversy of all diversity-based civil actions "exceeds the sum or value of $75,000, exclusive of interest and costs"). Accordingly, before addressing whether Mr. Blackford's state law claims satisfy Fed. R. Civ. P. 8, the Court addresses Chase's challenge to Mr. Blackford's damages claim. *See Wernsing v. Thompson*, 423 F.3d 732, 743 (7th Cir. 2005) ("[N]ot only may the federal courts police subject matter jurisdiction *sua sponte*, they must." (internal quotation omitted)).

Chase argues that Mr. Blackford's claim for "lost earnings" constitutes a request for consequential damages. [Filing No. 39 at 14.] Chase further argues that the Damages Limitation Clause prohibits recovery of consequential damages and that the clause is permitted and enforced under Indiana law. [Filing No. 39 at 14-15.]

Mr. Blackford does not contest Chase's characterization of his damages claim as a request for consequential damages. [*See* Filing No. 41.] Nor does Mr. Blackford dispute that the Damages Limitation Clause of the Agreement by its terms prohibits recovery of consequential damages. [*See* Filing No. 41.] Instead, Mr. Blackford argues that the Agreement did not govern his transactions with Chase. [Filing No. 41 at 1.] First, Mr. Blackford argues that the Agreement is invalid and unenforceable. [Filing No. 41 at 1-3; Filing No. 41 at 6-7; Filing No. 41 at 11.] Second, Mr. Blackford argues that, even if the Agreement was initially valid, Chase breached the Agreement so that the damages limitation would not apply. [Filing No. 41 at 2; Filing No. 41 at 4-6; Filing No. 41 at 11.]

### 1. Agreement Validity

Mr. Blackford contends that the Damages Limitation Clause is invalid because he did not

knowingly and willingly enter into the Agreement, citing his displeasure with Chase's conduct

leading to this case.[6]  [See Filing No. 41 at 1.]  Chase argues that Mr. Blackford is a sophisticated

party who agreed to be bound by the Agreement's terms.  [Filing No. 39 at 15-16.]

Indiana law, which governs this diversity case, generally recognizes contracts with clauses

that "exculpate or limit damages." Cottey v. Brink's Home Sec., Inc., 2011 WL 11526, at *4 (S.D.

Ind. 2011) (quoting Gen. Bargain Ctr. v. Am. Alarm Co., Inc., 430 N.E.2d 407, 411 (Ind. Ct. App.

1982)).  "Parties are permitted to make such contracts so long as they are knowingly and willingly

made and free from fraud. No public policy exists to prevent such contracts." Gen Bargain Ctr.,

430 N.E.2d at 411-12.  Indiana law "presume[s] that contracts represent the freely bargained

agreement of the parties," Trimble v. Ameritech Pub., Inc., 700 N.E.2d 1128, 1129 (Ind. 1998),

and presumes that a contract signatory "understand[s] the documents which he signs," Clanton v.

United Skates of Am., 686 N.E.2d 896, 899-900 (Ind. Ct. App. 1997).

A party may rebut the presumption that a contract represents the freely bargained

agreement of the parties if the party can demonstrate a "prodigious" disparity in bargaining power:

> When a party can show that the contract, which is sought to be enforced, was in
> fact an unconscionable one, due to a prodigious amount of bargaining power on
> behalf of the stronger party, which is used to the stronger party's advantage and is
> unknown to the lesser[] party, causing a great hardship and risk on the lesser party,

---

[6] Mr. Blackford also argues that the Agreement should be void as against public policy, [Filing No. 41 at 7], which is one of three exceptions to the rule that damages limitations are enforceable, Cottey v. Brink's Home Sec., Inc., 2011 WL 11526, at *4 (S.D. Ind. 2011); Indiana Dep't Of Transp. v. Shelly & Sands, Inc., 756 N.E.2d 1063, 1072 (Ind. Ct. App. 2001).  Mr. Blackford fails, however, to cite to legal authority or develop this argument in such a manner as would allow for meaningful consideration. See Gross v. Town of Cicero, 619 F.3d 697, 704 (7th Cir. 2010); Burton v. City of Franklin, 2011 WL 2938029, at *2 (S.D. Ind. 2011).  Accordingly, the Court rejects the argument that the Agreement is void as against public policy.

the contract provision, or the contract as a whole, if the provision is not separable, should not be enforceable . . . .

*Weaver v. Am. Oil Co.*, 276 N.E.2d 144, 148 (Ind. 1971).  However, a party who is experienced in business, educated, and able to shop around is himself too sophisticated to demonstrate that the other party had a "prodigious amount of bargaining power."  *See, e.g.*, *Menchhofer v. Honeywell, Inc.*, 2002 WL 24454, at \*4 (S.D. Ind. 2002) (concluding that there was no "prodigious disparity in bargaining power" where the plaintiff had bachelor's degree, some postgraduate education, and was a "sophisticated business person"); *see also Cottey*, 2011 WL 11526 at \*6 (reaching same conclusion where plaintiff was sophisticated and had other parties he could have contracted with for the services he sought).

Mr. Blackford's Second Amended Complaint undermines any argument that Chase had a prodigious amount of bargaining power.  Mr. Blackford alleges that he has a bachelor's degree, a law degree, and a successful business, and that he has used at least one other bank in the past, all of which demonstrates his sophistication and ability to shop around.  [*See* Filing No. 23 at 1-2; Filing No. 23 at 5.]  Accordingly, Mr. Blackford could not demonstrate that he did not knowingly and willingly enter into the Agreement with Chase as required to overcome the presumption under Indiana law that the Agreement was valid and freely bargained for by the parties.  Therefore, the Damages Limitation Clause is valid and enforceable.

### 2.   *Effect of Alleged Breach*

Mr. Blackford argues that even if the Agreement was initially valid, it later ceased to be valid at some point during his interactions with Chase due to Chase's breach, and thus the Damages Limitation Clause does not apply.  [Filing No. 41 at 1-6.]  Chase responds that the Agreement permitted all of Chase's actions and, regardless of Chase's actions, prohibits Mr. Blackford from recovering consequential damages.  [Filing No. 51 at 2-4.]

11

Having established that the Damages Limitation Clause is valid and enforceable, even if Mr. Blackford were correct that at some point Chase breached the Agreement, the Damages Limitation Clause would still operate to preclude consequential damages.[7]  *See Patterson v. J.P. Morgan Chase Bank*, 2013 WL 182813, *3 (E.D.N.Y. 2013) (holding that even if Chase breached its agreement with an account holder, "the Account Agreement forecloses any claim for consequential damages"); *Cottey*, 2011 WL 11526  (holding that even if defendant security company was negligent or breached warranties, the limitation of liability clause foreclosed any claim for consequential damages).  The very actions of which Mr. Blackford is accusing Chase would *trigger* the Damages Limitation Clause, not excuse him from it.[8]  Accordingly, any breach would not void the Damages Limitation Clause, and the clause prohibits Mr. Blackford from recovering consequential damages.

Because Mr. Blackford's Second Amended Complaint only claims consequential damages which are unavailable under the Agreement, Mr. Blackford cannot meet the amount in controversy requirement to invoke diversity jurisdiction in this Court.  Accordingly, Mr. Blackford's state law

---

[7] None of the cases to which Mr. Blackford cites provides for the contrary.  [*See* Filing No. 41 at 5.]

[8] Mr. Blackford's contract construction arguments do not change this analysis for the same reason.  [*See* Filing No. 41 at 1-3;  Filing No. 41 at 10-11.]  Even if Mr. Blackford's contract arguments were correct, the sole consequence would be that Chase would have breached the Agreement and triggered the Damages Limitation Clause.

claims are dismissed for lack of jurisdiction.[9]

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Chase's Motion to Dismiss.  [Filing No. 38.]  Mr. Blackford's racketeering claim under 18 U.S.C. § 1961 (Count Two) is **DISMISSED WITH PREJUDICE**.  The remainder of Mr. Blackford's claims are **DISMISSED** for lack of jurisdiction.

The Court notes that this Order appears to moot the issues raised in Chase's Motion to Compel Discovery.  [Filing No. 52.]  Chase must advise the Court within **7 days** of this Order whether it intends to pursue its fees and costs in connection with the Motion to Compel Discovery, as outlined in the Court's November 5, 2015 Order granting the motion, [Filing No. 54].  The Court will enter judgment after the fees and costs issue has been withdrawn by Chase, or resolved.[10]

Date: 11/10/2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[9] The Court notes that Mr. Blackford's Second Amended Complaint also likely falls short of Federal Rule of Civil Procedure 8's notice pleading standards.  Should Mr. Blackford decide to refile in Indiana state court, Mr. Blackford should familiarize himself with Indiana pleading standards which, like the federal rules, require "a short and plain statement of the claim showing that the pleader is entitled to relief."  Ind. R. Trial P. 8(A)(1).  Additionally, Mr. Blackford makes numerous requests for judgment on the pleadings under Fed. R. Civ. P. 12(c).  [Filing No. 41 at 7-9.]  Even if the motions, contained within his brief, were properly before the Court, they would be moot in light of the Court's ruling on Chase's Motion to Dismiss.

[10] Despite the Court's dismissal of Mr. Blackford's claims, the Court retains jurisdiction over the award of fees and costs in connection with Chase's Motion to Compel Discovery.  *See, e.g., Citizens for a Better Environment v. Steel Co.*, 230 F.3d 923, 927 (7th Cir. 2000) (district court retained jurisdiction to award fees and costs after dismissal of underlying claims).